<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION, | |
| Plaintiff, | |
| v. | Civil Action No. 08-6421 (GEB) |
| RICO, LLC, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court upon the Motion for Summary Judgment filed by Plaintiff Keybank National Association ("Plaintiff"). (Doc. No. 16.) The defendants Rico, LLC, William E. Flango, Jr., Barbara Flango, Daniel E. Flango, and Courtney L. Flango (collectively, "Defendants") oppose the motion. The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant Plaintiff's Motion for Summary Judgment.

**I.    BACKGROUND**

This matter involves a breach of contract action for damages resulting from Defendants' failure to honor the terms of promissory notes issued by Defendants to Plaintiff. Plaintiff is a National Banking Association located in Cleveland, Ohio, and is a wholly owned subsidiary of KeyCorp, an Ohio Corporation. Defendant is Rico, LLC, a New Jersey Company, and includes

as members William E. Flango, Jr., Barbara Flango, Daniel E. Flango, and Courtney L. Flango. Defendants intended to build a Dairy Queen franchise in Hamilton, New Jersey. To provide financing for this endeavor, Defendants entered into two separate Building Loan Agreements with Plaintiff on or about March 24, 2005, in the amounts of $543,500 and $380,450. (Pl.'s 56.1 Stmt. at ¶¶ 7, 15; Doc. No. 16-1.) In connection with these loans, Defendant William Flango executed separate promissory notes on behalf of Defendant Rico, LLC, in the principle sums of $543,500 and $380,450 (the "Notes"). (Id. at ¶¶ 9, 16.) Both Notes provided for initial interest rates of 6.75%, interest only payments due on the first of each month and late charges of 5% of the unpaid portion of scheduled payments for payments more than ten days late, and a default interest rate of five percentage points over Plaintiff's Prime Rate. (Id. at ¶¶ 10-14, 17-21.)

Both Notes provided for maturity dates on March 1, 2006, and called for payment in full on that date. (Id. at ¶¶ 12, 19.) Plaintiffs, however, agreed to extensions of both loans on two separate occasions (the "Loan Modification Agreements"). First, on or about May 15, 2006, the parties agreed to extend the maturity date of both Notes to August 1, 2006, and required that interest only payments continue to be paid on the first of each month for both Notes. (Id. at ¶¶ 22-24.) Then, on or about September 21, 2006, the parties again agreed to extend the maturity date of both Notes, this time to January 1, 2007, and the same requirement that interest only payments continue to be paid on the first of each month. (Id. at ¶¶ 25-27.)

In addition to the promissory notes on Defendant Rico's behalf, Defendants William E. Flango, Jr., Barbara Flango, Daniel E. Flango, and Courtney L. Flango each executed a Commercial Guarantee (the "Guarantees"), which unconditionally guaranteed to Plaintiff the full payment of both Notes. (Id. at ¶¶ 28-31.) The Guarantees call for immediate payment of all

amounts due under the Notes in the event of any failure to pay.  (Id. at ¶ 33.)

As of December 9, 2008, the full principle sum of both Notes, as well as interest and other charges, remained unpaid.  (Id. at ¶¶ 37-39.)  On December 31, 2008, Plaintiff filed the instant Complaint against Defendants, alleging four counts.  Plaintiff alleges total default by Defendants with respect to both Notes, demanding judgment on the principal sum of both Notes, interest, late charges, costs of suit and attorney's fees, and any other relief deemed just and equitable (Counts I and II).  (Compl. at ¶¶ 35-38, 40-43; Doc. No. 1.)  Plaintiff also demands judgment against each individual defendant based on the Guarantees (Count III).  (Id. at ¶¶ 51.)  Finally, Plaintiff alleges that Defendant Rico is insolvent, has been grossly mismanaged, and is conducting business in a manner prejudicial to Plaintiff (Count IV).  (Id. at ¶¶ 53-58.)  Pursuant to Count IV, Plaintiff demanded a temporary injunction and Pre-Judgment Writ of Attachment as to the assets of Rico, LLC, appointment of a receiver for Rico, LLC, and accounting, damages, interest, attorneys fees, and any other relief deemed just and equitable.  (Id. at ¶ 58.)[1]

Defendants filed an Answer to this Complaint on February 2, 2009, denying only the allegations in Count IV, and asserted as an affirmative defense that the parties had orally agreed to convert the loans to permanent financing.  (Doc. No. 10.)

Plaintiff filed the instant Motion for Summary Judgment on December 7, 2009.  (Doc. No. 16.)  Defendants filed a certification of William E. Flango, Jr., in opposition to the motion on December 21, 2009.  (Doc. No. 19.)

---

[1] The claims made and relief sought in Count Four are not addressed by Plaintiff in its motion. Therefore, the Court considers the instant motion as one for partial Summary Judgment.

## II. DISCUSSION

### A. Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

The Local Rules supplement the Federal Rules and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." LOC. CIV. R. 56.1(a). "Where possible, a single joint Rule 56.1 statement is favored." ALLYN Z. LITE, NEW JERSEY FEDERAL PRACTICE RULES 192 (2006 ed.) (citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted). However, "the parties' L. Civ. R. 56.1 statements cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

4

**B.     Analysis**

        1.      <u>Local Rule 56.1 Statement of Material Facts Not in Dispute</u>

Local Rule 56.1 requires a Statement of Material Facts Not in Dispute by the movant, and a responsive statement by the opponent. LOC. CIV. R. 56.1(a). If any material fact is not disputed or responded to, such fact "shall be deemed undisputed for purposes of the summary judgment motion." <u>Id.</u> On December 7, 2009, pursuant to Local Rule 56.1, Plaintiff filed a Statement of Material Facts Not in Dispute. (Doc. No. 16-1.) Defendants, however, failed to file a responsive statement. Therefore, all of the facts presented in the Plaintiff's 56.1 Statement shall be deemed admitted. These facts include the existence of and details concerning both the $543,500 and $380,450 loan, the existence and details of both loan modification agreements, the existence and details of each defendant's individual commercial guarantee, and the failure to repay the principal and interest in accord with the agreements. (<u>Id.</u>)

        2.      <u>Defendants' Arguments Based on Verbal Agreements</u>

Defendants have disputed Plaintiff's interpretation of the terms of the loan agreements, and their contentions are that they have been "the victims of fraud at the inception of this loan," and that they "were promised a $1,000,000 permanent financing from Key Bank at the time [they] decided to build [their] Dairy Queen location at the Hamilton Market place in Hamilton." (Cert. of William E. Flango, Jr. ¶ 4, Dec. 21, 2009; Doc. No. 19.) In support of this claim, Defendants have referred to "verbal promises by Fred Mills, then the Vice President at Key Bank who was a loan officer out of the Newburg, New York office." (<u>Id.</u> at ¶ 5.) According to Defendants, they agreed to the loans based on "explicit promises of Fred Mills of Key Bank that

this construction loan would be converted to permanent financing." (Id. at ¶ 7.)

Defendants' reliance on these conversations is misplaced. "Where the contract or agreement is unambiguous, parol evidence of prior inconsistent terms or negotiations is inadmissible to demonstrate intent of the parties." Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148 (3d Cir. 1994). In this instance, the original loan agreements are both clear and unambiguous. The original Notes for both the $543,500 loan and the $380,450 contain an identical integration clause. This clause states, with respect to agreements to loan money or extend credit, that "any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it." (Pl.'s Ex. A at 4; Pl.'s Ex. B at 4; Doc. No. 16.) Both Loan Modification Agreements also contain integration clauses, which state:

> Neither this Agreement nor any other Loan Document nor any provision hereof or thereof may be modified, amended, changed, waived, discharged, or terminated orally, but only by an instrument in writing signed by the other party against whom enforcement of the change, waiver, discharge or termination is sought.

(Pl.'s Ex. C at ¶ 6; Pl.'s Ex. D at ¶ 6; Doc. No. 16.)

Under New Jersey law, "the parol evidence rule 'prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing.'" Harbour Cove Marine Servs. v. Rabinowitz, No. 02-1695, 2005 U.S. Dist. LEXIS 36794, at *7 (D.N.J. Aug. 29, 2005) (citing RICHARD A. LORD, WILLISTON ON CONTRACTS, § 33 (4th ed. 1999)); see also Zone Co. v. Serv. Transp. Co., 137 N.J.L. 112, 116 (App. Div. 1948) (stating that "[w]here there was an intention to merge all prior subjects of

negotiation and agreement in a single memorial as the final repository of the understanding, the writing is conclusive of the terms of the agreement, and extrinsic evidence to vary or contradict the integration is inadmissible"). As such, the Court concludes as a matter of law that Defendants' arguments based on asserted external communications cannot stand, and the terms of the Notes and Loan Modification Agreements are binding.

Defendants have argued that they orally agreed with Plaintiff to convert the loans to permanent financing. However, even if the parol evidence rule did not bar consideration of any such conversations, the Court concludes that the waiver contained in the Loan Modification Agreements also precludes Defendants' defense. Both Loan Modification Agreements contained the following statement: "[T]here are no offsets, defenses, or counterclaims to the Borrower's or Guarantor's obligations under the Loan and the Loan documents." (Doc. No. 20.) New Jersey courts have upheld such waivers in similar contexts. See, e.g., N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc., 319 N.J. Super. 435, 450-51 (App. Div. 1998) (upholding waiver where "record clearly reflects that defendants waived their claims and defenses relating to the loan"). Given these provisions, the Court concludes that any claims of a permanent financing arrangement advanced by Defendants are barred not only by the parol evidence rule, but by the express terms of the waiver agreement as well. The Court concludes that Defendants have breached a clear and unambiguous contract with Plaintiff, and Plaintiff is entitled to judgment.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's Motion for Summary Judgment. An appropriate form of order accompanies this Memorandum Opinion.

Dated: June 1, 2010

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.